[Cite as *Hughes v. Portage Cty. Bd. of Commrs.*, 2023-Ohio-260.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| JANE L. HUGHES, INDIVIDUALLY, AND AS TRUSTEE FOR THE JANE L. HUGHES REVOCABLE TRUST DATED MARCH 23, 1994, et al., | CASE NO. 2021-P-0065 |
| Plaintiffs-Appellants, | Civil Appeal from the Court of Common Pleas |
| - v - | Trial Court No. 2019 CV 00387 |
| THE BOARD OF COUNTY COMMISSIONERS FOR PORTAGE COUNTY, | |
| Defendant-Appellee. | |

**O P I N I O N**

Decided: January 30, 2023
Judgment: Affirmed

*Nicole T. Fiorelli*, *Patrick J. Perotti*, and *Frank A. Bartela*, Dworken & Bernstein Co., LPA, 60 South Park Place, Painesville, OH 44077; *Benjamin Calkins*, The Calkins Law Firm, 100 North Main Street, Suite 235, Chagrin Falls, OH 44022; and *Robert McNamara*, McNamara, Demczyk Co., LPA, 12370 Cleveland Avenue, NW, Uniontown, OH 44685 (For Plaintiffs-Appellants).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Christopher J. Meduri*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1}   Appellants, Jane L. Hughes, individually and as trustee for the Jane L. Hughes revocable trust dated March 23, 1994; Warner L. Hughes, individually and as trustee for the Warner L. Hughes revocable trust dated March 23, 1994; and Kenneth T. Hughes, individually and as trustee for the Kenneth T. Hughes revocable trust dated

August 10, 2007 (collectively "the Hughes"), appeal the trial court's decision dismissing their first amended class action complaint against the Board of County Commissioners for Portage County ("the county").

{¶2} At that outset, because the crux of the Hughes' allegations in this case pertains to the application of current agricultural use values (CAUVs) of real property for tax purposes, we briefly outline the CAUV program. For real property tax purposes, property is typically "valued by the county auditor at its 'true value in money,' R.C. 5713.01(B), which 'refers to "the amount for which that property would sell on the open market by a willing seller to a willing buyer * * *, i.e., the sales price."'" (Ellipsis sic.) *Johnson v. Clark Cty. Bd. of Revision*, 155 Ohio St.3d 264, 2018-Ohio-4390, 120 N.E.3d 823, ¶ 10, quoting *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 9, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964). "In 1974, however, the General Assembly enacted the CAUV statute, R.C. 5713.30 et seq., which permits owners of land that is devoted exclusively to agricultural use to request the auditor to value the property in accordance with its current agricultural use rather than its true market value." *Johnson* at ¶ 11, citing *Maralgate, L.L.C. v. Greene Cty. Bd. of Revision*, 130 Ohio St.3d 316, 2011-Ohio-5448, 958 N.E.2d 153, ¶ 13-14, and *Adams v. Testa*, 152 Ohio St.3d 207, 2017-Ohio-8853, 94 N.E.3d 539, ¶ 6 ("agricultural land" includes "land upon which timber is grown that is part of or next to farmland"), citing R.C. 5713.30. "[I]n general, a value determined by agricultural use is lower than a property's true market value and therefore, CAUV status typically results in a lower real-property-tax liability." *Johnson* at ¶ 12, citing *Renner v. Tuscarawas Cty. Bd. of Revision*, 59 Ohio St.3d 142, 572 N.E.2d 56 (1991).

2

{¶3}    To set the CAUVs, the state "tax commissioner is required to adopt rules to determine the 'current agricultural use value' of such land." *Adams* at ¶ 4, quoting R.C. 5715.01(A).   "The rules are to take into account soil productivity, crop-price patterns, capitalization rates, farmland market values, and other pertinent factors." *Adams* at ¶ 4, citing R.C. 5715.01.   "The CAUVs are set forth in a table that is promulgated by the tax commissioner each year." *Adams* at ¶ 7, citing Ohio Adm.Code 5703-25-31(D).   The annual CAUV table applies to land in counties completing their sexennial reappraisal or three-year update in the ensuing tax year.   *See* Ohio Adm.Code 5703-25-31(D).   "The table establishes a per-acre CAUV for both cropland and woodland for each soil type in Ohio." *Adams* at ¶ 7.   The CAUVs are finalized by the tax commissioner's adoption of an administrative journal entry.   Ohio Adm.Code 5703-25-31(D).   The commissioner's administrative journal entry adopting the CAUVs is appealable to the board of taxation pursuant to R.C. 5717.02.   *Adams* at ¶ 42.

{¶4}    The county auditors apply the tables to properties which have been approved for CAUV application.   Ohio Adm.Code 5703-25-34 ("If the auditor, as of the first Monday in June, determines that the land is devoted exclusively to agricultural use the auditor shall appraise it for real property tax purposes as provided in this chapter."); *Adams* at ¶ 5 ("The county auditors * * * use the CAUVs 'as prima-facie correct valuation for parcels or tracts of land devoted exclusively to agricultural use.' Ohio Adm.Code 5703-25-31(E).").   The auditor's application of the CAUV tables to qualifying land may be "challenged by the filing of a complaint to a board of revision, where a property owner would have the opportunity to present evidence to establish that the property's agricultural

3

use value is something other than that amount assessed by the auditor." *Johnson v. McClain*, Board of Tax Appeals No. 2016-814, 2020 WL 1274335, *2 (Mar. 6, 2020).

{¶5} In 2019, the Hughes filed a class-action complaint on their behalf and on behalf of all others similarly situated, against Portage County, on its behalf and on behalf of all other similarly situated counties, alleging that the state CAUV calculations, specifically minimum values of $350 per acre for cropland and $230 per acre for woodland, and an automatic 5% management cost, failed to comply with governing provisions in the Ohio Constitution, Revised Code, and Administrative Code. As a result, the Hughes maintained that the county and putative defendant class collected unlawful and excessive property taxes from the Hughes and the putative plaintiff class to whom the CAUVs apply. The complaint sought relief through claims for equitable disgorgement, unjust enrichment, and declaratory judgment and included a request for injunctive relief.

{¶6} Thereafter, the county answered and moved to dismiss the complaint. In its motion to dismiss, the county maintained that the declaratory judgment action should be dismissed for failure to name the tax commissioner as a party, which deprived the trial court of jurisdiction relative to the declaratory judgment claim. The county further argued that the complaint named "the county" as a defendant, but "the county" is not a legal person or entity that could be sued, and the complaint did not name the Board of Commissioners of Portage County, the county auditor, or the county treasurer as parties. The county further maintained that the Hughes complaint challenged the tax commissioner's determination of the CAUVs, and the Hughes failed to exhaust administrative remedies through an appeal of the commissioner's journal entry to the board of tax appeals pursuant to R.C. 5717.02. Moreover, the county contended that the

4

complaint could arguably be deemed as coming within the purview of R.C. Chapter 2723, which sets forth a statutory procedure for enjoining and recovering illegal taxes and assessments. However, the claims would be subject to a written protest provision and a one-year statute of limitations. Last, the county argued that the Hughes' request for an injunction was prohibited by R.C. 5703.38.

{¶7} The Hughes moved to amend their complaint. The trial court granted the county's motion to dismiss and found the Hughes' motion moot. In a prior appeal, the Hughes challenged the trial court's rulings on these motions. *Hughes v. Portage Cty.*, 11th Dist. Portage No. 2020-P-0012, 2020-Ohio-6809, ¶ 10. We concluded that the trial court abused its discretion in granting the county's motion to dismiss the complaint without permitting the Hughes leave to amend their complaint. *Id.* at ¶ 25. Accordingly, we reversed the judgment and remanded the matter, noting that "[o]n remand, the trial court shall grant the Hughes' motion for leave to amend, and thereafter, the county may renew its motion to dismiss based on the Hughes' amended complaint, if it so chooses." *Id.* at ¶ 26.

{¶8} Thereafter, the Hughes filed their first amended class-action complaint, naming the board of county commissioners ("the county")[1], as legal representative of the county in legal actions, and on behalf of all other Ohio counties, as the defendant. The amended complaint alleged that the "Defendants' County Auditors or other agents" used the minimum values to value the real property of the Hughes and the putative plaintiff class, however the use of the minimum values violated R.C. 5713 et seq. and Ohio Adm.Code 5703 et seq. The Hughes further alleged that the "Defendants' County

_____
1. We refer to both Portage County and the Portage County Board of Commissioners as "the county" for ease of discussion only.

Case No. 2021-P-0065

Auditors or other agents" use of the automatic 5% offset for management costs violated Ohio Adm.Code 5703-25-33(I). The Hughes specified that no administrative remedy was available to them. The amended complaint sought relief through a claim of unjust enrichment.

{¶9} The county moved to dismiss the amended complaint. In its motion, the county maintained that, although the Hughes had "eliminated any language from the First Amended Complaint touching upon the actions at the 'state level' the problem continues because the crux of the amended complaint remains the CAUV tax tables and these tax tables are adopted by the tax commissioner and merely applied by local auditors." Therefore, although the county agreed that the Hughes could not challenge the tax commissioner's calculations through an appeal to the board of revision, an appeal to the board of tax appeals pursuant to R.C. 5717.02 was available to the Hughes. Alternatively, the county maintained that if no administrative remedy was available and the tax commissioner was not a necessary party, the Hughes failed to proceed in accordance with R.C. 2723.01 et seq., which the county maintained "sets forth the statutory process that requires the filing of a written protest and a notice of intent to sue, and then the filing of the action in the common pleas court against the county auditor and county treasurer seeking an injunction and restitution," and such an action is required to be filed within one year of the date the taxes were due. Further, the county maintained that ruling in the Hughes favor would essentially result in an injunction of the tax commissioner's valuations in conflict with R.C. 5703.08. Last, due to the nature of the allegations, the county maintained that, if there were no administrative remedy available, the appropriate action would be a mandamus action against the tax commissioner.

6

{¶10} The Hughes opposed the county's motion but did not again move to amend their complaint. The Hughes maintained that the appeal to the board of tax appeals pursuant to R.C. 5717.02 was not available recourse because they maintained that the tax commissioner is not required to give notice of the journal entry to taxpayers, and taxpayers cannot obtain a refund of overcharges by challenging the tax commissioner's journal entry. Further, the Hughes maintained that R.C. Chapter 2723 did not require dismissal of their unjust enrichment claim. Moreover, the Hughes argued that they did not seek injunctive relief, therefore R.C. 5703.08 was not at issue. Last, the Hughes maintained that a mandamus action was not available to them because they have an adequate remedy at law in the form of their claim for unjust enrichment.

{¶11} The trial court dismissed the complaint, concluding that:

> Upon review of the original Complaint and the First Amended Complaint this Court concludes the First Amended Complaint has not cured the defect(s) that existed in the original Complaint. The underlying basis of both complaints concern the minimum values for cropland and woodland and the minimum deduction fee which are established and adopted by the tax commissioner, and then applied by the county auditor to agricultural land, with such taxes being collected by the county treasurer. Neither complaint named the tax commissioner or the county auditor or the county treasurer. The pleadings reveal that the plaintiff landowners did not exhaust administrative remedies as provided for pursuant to R.C. 5717.02.

{¶12} In their sole assigned error, the Hughes argue:

{¶13} "The trial court erred in dismissing Plaintiffs' unjust enrichment claim."

{¶14} The trial court dismissed the Hughes' complaint for failure to state a claim pursuant to Civ.R. 12(B)(6). "'"An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review.'" *Taylor-Winfield Corp. v. Huntington Bank*, 11th Dist. Trumbull

7

No. 2021-T-0015, 2021-Ohio-3480, ¶ 4, quoting *LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 10, quoting *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. "A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the legal sufficiency of the complaint." (Citations omitted.) *Taylor-Winfield* at ¶ 5. "'In reviewing a motion to dismiss for failure to state a claim, we accept as true all factual allegations in the complaint. A complaint should not be dismissed unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."'" (Internal citation omitted.) *Taylor-Winfield* at ¶ 5, quoting *LGR Realty* at ¶ 10, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶15} Here, the Hughes sought restitution of the alleged property tax overcharges. The Hughes maintained that "Defendants' County Auditors or other agents'" use of the CAUV minimum values violated R.C. 5713 et seq. and Ohio Adm.Code 5703 et seq. "including ignoring factors required by Ohio Adm.Code 5703-25-33(L)." Further, the Hughes maintained that "Defendants' County Auditors or other agents'" use of an automatic 5% management deduction fee violated Ohio Adm.Code 5703-25-33(I), which requires an annual percentage offset for "typical management costs."

{¶16} Thus, the Hughes' amended complaint frames the challenges in terms of actions occurring at the county level (e.g. "Defendants' County Auditors or other agents did not use the actual value of that cropland in calculating Plaintiffs' and the Class Members' CAUV tax, but uniformly and consistently, for the named Plaintiffs and identically for all Class Members, instead used a 'minimum value' of $350 per acre for all

8

such cropland."). However, the county auditors do not set the CAUV "minimum values" or "typical management costs." Instead, these amounts are contained in the tax commissioner's CAUV tables which are applied by the auditors. *See* Ohio Adm.Code 5703-25-31(E). Accordingly, the county agrees that these minimum values and typical management costs could not be challenged through an appeal of the auditor's assessments to the board of revision. However, the parties dispute whether the Hughes were required to challenge the tax commissioner's tables through an appeal to the BTA pursuant to R.C. 5717.02.

{¶17} The Hughes primarily contend that they should not be required to exhaust the remedy of an appeal under R.C. 5717.02 because the table is adopted with respect to each county every three years, and there exists a 60-day deadline to appeal the tax commissioner's entry adopting the table to the BTA, which runs prior to the taxpayer receiving even the first tax bill calculated with the applicable CAUV.

{¶18} Although the Supreme Court of Ohio has held that a taxpayer may appeal the tax commissioner's entry adopting the CAUV tables to the BTA, the deadline to appeal the entry and whether an appeal to the BTA must be exhausted prior to court involvement were not at issue.[2] *See Adams*, 2017-Ohio-8853. We do not resolve these issues here. Instead, assuming without deciding that the Hughes were not required to exhaust an

---

2. R.C. 5717.02(B) provides that "[t]he notice of appeal shall be filed within sixty days after service of the notice of the tax assessment, reassessment, valuation, determination, finding, computation, or order by the commissioner, property tax exemption determination by the commissioner or the county auditor, or redetermination by the director has been given as provided in section 5703.37, 5709.64, 5709.66, or 5733.42 of the Revised Code." However, we have not located any authority requiring the notice of the tax commissioner's entry adopting the CAUVs to be given to any party as provided in the sections referenced in R.C. 5717.02(B). Therefore, it is unclear to this court when the 60-day timeframe for appeal to the BTA commences, and neither party to this appeal has addressed this issue.

9

administrative appeal to the BTA, we conclude that the complaint was properly dismissed for failing to state a claim under R.C. Chapter 2723.

{¶19} The county maintains that if the Hughes were not required to administratively appeal the tax commissioner's entry or name the tax commissioner as a party, the Hughes were required to proceed pursuant to R.C. Chapter 2723. This Chapter sets forth a statutory procedure for enjoining and recovering illegal taxes and assessments. R.C. 2723.01. R.C. 2723.01 provides that "[c]ourts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof, but no recovery shall be had unless the action is brought within one year after the taxes or assessments are collected."

{¶20} The chapter specifies the defendants that must be named in such an action depending upon the nature of the claim. R.C. 2723.02 provides,

> Actions to enjoin the illegal levy of taxes and assessments must be brought against the corporation or person for whose use and benefit the levy is made. If the levy would go upon the county duplicate, the county auditor must be joined in the action.

In addition, R.C. 2723.03 provides,

> Actions to enjoin the collection of taxes and assessments must be brought against the officer whose duty it is to collect them. Actions to recover taxes and assessments must be brought against the officer who made the collection, or if he is dead, against his personal representative. When they were not collected on the county duplicate, each corporation or board which is entitled to share in the revenue so collected must be joined in the action.
>
> * * *

{¶21} R.C. 2723.03 further provides:

10

* * *

> If a plaintiff in an action to recover taxes or assessments, or both, alleges and proves that he or the corporation or deceased person whose estate he represents, at the time of paying such taxes or assessments, filed a written protest as to the portion sought to be recovered, specifying the nature of his claim as to the illegality thereof, together with notice of his intention to sue under sections 2723.01 to 2723.05, inclusive, of the Revised Code, such action shall not be dismissed on the ground that the taxes or assessments, sought to be recovered, were voluntarily paid.

{¶22} With respect to R.C. Chapter 2723, in their opposition to the county's motion to dismiss their first amended complaint, the Hughes maintained that "as master of their complaint, [the Hughes] brought a claim for unjust enrichment, not for a violation of R.C. 2723.01. Accordingly, the County's arguments about a one-year statute of limitations, payment under protest requirements, and prohibited injunctive relief against the tax commissioner have no bearing here." The trial court concluded that "[t]he First Amended Complaint seeks an equitable remedy from the Portage County Board of Commissioners and references the collection of taxes since 2005. If no administrative remedy existed to challenge the CAUV land tables an action to recover taxes unlawfully assessed by the county auditor and collected by the county treasurer may be filed against the county auditor and county treasurer within one year of such assessment and collection," and the "statutory process describes that at the time of paying the disputed taxes a written protest and notice of intention to sue is to be presented."

{¶23} In their appellate brief, the Hughes continue to maintain that they permissibly sought an unjust enrichment claim, and they were not required to proceed pursuant to R.C. Chapter 2723.

11

{¶24} However, the Ohio Supreme Court has stated that "R.C. 2723.01 et seq. provide the exclusive means by which a taxpayer may, with the approbation of the court, demand that the county auditor refund erroneously collected taxes." *Ryan v. Tracy*, 6 Ohio St.3d 363, 366, 453 N.E.2d 661, 664 (1983); *see also Premier Empire v. Brown*, 69 Ohio App.3d 144, 146, 590 N.E.2d 296 (9th Dist.1990).

{¶25} The Hughes' First Amended Complaint seeks the return of allegedly erroneously collected taxes. Accordingly, R.C. Chapter 2723, by its express terms, governs the Hughes' complaint. *See* R.C. 2723.01 ("Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments *and entertain actions to recover them when collected*, without regard to the amount thereof, but no recovery shall be had unless the action is brought within one year after the taxes or assessments are collected.") (Emphasis added.).

{¶26} In their reply brief the Hughes for the first time present the argument that, if this court were to conclude that R.C. Chapter 2723 does apply, their complaint suffices under the provisions of that chapter, and, if they are required to name the county treasurer pursuant to R.C. 2723.03, they request this court remand the matter for the opportunity to amend their complaint to name the treasurer. However, as set forth above, the Hughes represented to the trial court that they *were not* seeking a claim pursuant to R.C. Chapter 2723, stating:

> Plaintiffs, as the master of their complaint, brought a claim for unjust enrichment, not for a violation of R.C. 2723.01. Accordingly, the County's arguments about a one-year statute of limitations, payment under protest requirements, and prohibited injunctive relief against the tax commissioner have no bearing here.
>
> * * *

12

Case No. 2021-P-0065

Plaintiffs, as the masters of their complaint brought a claim for unjust enrichment, not for a violation of R.C. 2723.01. Plaintiffs were not required to bring every claim available to them. *Bachtel v. Jackson*, 10th Dist. No. 08AP-714, 2009-Ohio-1554, ¶ 21;

* * *

Similarly, the protest requirements of R.C. Chapter 2723 do not apply because Plaintiffs brought a claim for unjust enrichment, not a claim to enjoin the collection of illegal taxes under R.C. Chapter 2723.

* * *

Since the General Assembly has waived payment under protest with respect to real property valuation disputes, it makes no sense to require payment under protest for an unjust enrichment claim that does not implicate the payment under protest requirements of R.C. Chapter 2723.

* * *

The County also submits that R.C. 2723.01's one-year limitations period applies here. Again, Plaintiffs' claim is for unjust enrichment, which as a six-year limitations period. R.C. 2305.07. The statute of limitations for R.C. 2723.01 is inapplicable.

* * *

Also inapplicable is the County's argument that if Plaintiffs were proceeding under R.C. 2723.01, they could seek to enjoin the County's conduct, and such an injunction would apply to the Tax Commissioner, which is prohibited. Again, Plaintiffs' First Amended Complaint does not seek relief under R.C. Chapter 2723. Nor does the First Amended [C]omplaint seek injunctive relief. Therefore, the County's speculation about what might have happened if Plaintiffs had filed a different complaint with different claims in inapposite.

{¶27} As the Hughes repeatedly assured the trial court that they did not seek a claim pursuant to R.C. Chapter 2723, they invited any error in the trial court's

13

determination that "[t]he First Amended Complaint does not proceed under R.C. 2723.01 to R.C. 2723.05." "Under the 'invited error' doctrine, '[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.'" *Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 313, 511 N.E.2d 106, 109 (1987), quoting *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus.

{¶28} Accordingly, the Hughes' claim was governed by R.C. Chapter 2723, and, as they maintained that their complaint did not seek relief under that chapter, their complaint was properly dismissed. Consequently, we do not reach the remaining bases for dismissal addressed in the trial court's dismissal entry or argued by the county.

{¶29} The judgment is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

Case No. 2021-P-0065